UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HOSEY WHITMORE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WILLIE RUCKER, et al.,<br><br>　　　　Defendants. | CAUSE NO. 3:21-CV-6-MGG |

OPINION AND ORDER

Hosey Whitmore, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Dr. Willie Rucker in his individual capacity "for compensatory, punitive, and nominal damages for deliberate indifference to his medical needs from June 17, 2019, to February 12, 2020, in violation of the Eighth Amendment[.]" ECF 12 at 5. Second, he is proceeding "against Wexford of Indiana, LLC for compensatory, punitive, and nominal damages for following a collegial review policy that resulted in him receiving constitutionally inadequate care for the painful condition that developed on June 17, 2019, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a motion for summary judgment. ECF 85. Whitmore filed a response, and the defendants filed a reply. ECF 94, 96. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the

evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

<u>*Eighth Amendment claim against Dr. Rucker*</u>

Whitmore is proceeding against Dr. Rucker "for deliberate indifference to his medical needs from June 17, 2019, to February 12, 2020, in violation of the Eighth Amendment[.]" ECF 12 at 5. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person

2

responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Rucker provides an affidavit and Whitmore's medical records, which show the following facts: On June 17, 2019, Whitmore submitted a Healthcare Request Form ("HCRF") stating he needed to be seen for his wisdom tooth. ECF 86-1 at 5-6; ECF 86-5 at 69. On June 21, 2019, Dr. Rucker saw Whitmore and conducted an oral examination which displayed very poor oral hygiene. ECF 86-1 at 6; ECF 86-5 at 75. Whitmore complained of tooth pain related to his wisdom tooth, so Dr. Rucker sent him for an x-ray which showed the wisdom tooth was impacted. *Id.* Dr. Rucker submitted a request for off-site surgery to extract the impacted tooth. *Id.* This request was submitted to Dr.

3

Pearcy, who denied the request later that day. *Id.*; ECF 86-5 at 79. On June 27, 2019, Dr. Rucker added an addendum to Whitmore's dental records noting Dr. Pearcy had denied his request to extract Whitmore's wisdom tooth but extraction would be necessary in the future to prevent infection. *Id.*

Whitmore did not submit any additional HCRF complaining of tooth pain until October 2019. ECF 86-1 at 6-7. On October 30, 2019, Whitmore submitted a HCRF stating he was on the list for oral surgery, but needed something for his tooth pain. ECF 86-1 at 7; ECF 86-5 at 68. In response, Dr. Rucker saw Whitmore on November 7, 2019, and examined his wisdom tooth. ECF 86-1 at 7; ECF 86-5 at 75. The tooth was horizontally impacted, so Dr. Rucker told Whitmore he would ask for him to be seen by an oral surgeon but warned him the request for surgery might be denied because the pain was only intermittent. *Id.* Dr. Rucker told Whitmore that if the oral surgery request was denied, he should contact dental if his tooth pain became constant. *Id.* Dr. Rucker also performed another x-ray, noted Whitmore had bad oral hygiene, and provided him instructions regarding his hygiene. *Id.* Lastly, Dr. Rucker prescribed Cephalexin and Acetaminophen because it appeared Whitmore had an infection in his tooth and gums, and instructed him to submit further HCRF if his pain or symptoms worsened. *Id.* All paperwork was sent to Dr. Pearcy, and the request for oral surgery was denied. *Id.* Dental staff responded to Whitmore's HCRF stating he had been denied for oral surgery, that he should take Cephalexin and Acetaminophen as prescribed, and that he should let dental know if his symptoms worsened. *Id.*; ECF 86-5 at 68.

4

On December 10, 2019, Whitmore submitted an informal grievance asking why his request for oral surgery had been denied. ECF 86-1 at 7-8; ECF 86-5 at 67. Dental staff responded that he had been seen in June and November for intermittent tooth pain, his requests for oral surgery had been denied by the dental director, and he should contact dental if his symptoms changed. *Id.*

On December 16, 2019, Whitmore submitted a HCRF asking who had denied his request for oral surgery. ECF 86-1 at 8; ECF 86-5 at 66. A response dated December 19, 2019, stated his request for oral surgery had been denied by the "dental director." *Id.* Whitmore then submitted a subsequent HCRF asking "Who is the dental director here at ISP?" ECF 86-5 at 65. A member of dental staff responded that Dr. Rucker was ISP's dental director. *Id.* However, Dr. Rucker attests the response inaccurately listed him as the dental director at ISP, and should have indicated Dr. Pearcy as the regional dental director who had denied Whitmore's request for oral surgery. ECF 86-1 at 8.

On January 6, 2020, Whitmore submitted a HCRF stating he had "constant pain" in his wisdom tooth and his gums were swollen. ECF 86-1 at 8; ECF 86-5 at 64. On January 8, 2020, Dr. Rucker saw Whitmore and conducted another oral examination. ECF 86-1 at 8-9; ECF 86-5 at 76, 81. Dr. Rucker submitted another outpatient request for extraction of Whitmore's wisdom tooth and prescribed him acetaminophen in the meantime. *Id.* On January 16, 2020, Dr. Pearcy approved Dr. Rucker's outpatient request for a tooth extraction. *Id.* On February 12, 2020, Whitmore received surgery to remove his wisdom tooth. ECF 86-1 at 9; ECF 86-5 at 76-77. On February 13, 2020, Dr. Rucker

5

saw Whitmore for his post-op appointment, completed an oral examination, and concluded Whitmore was healing well. ECF 86-1 at 9; ECF 86-5 at 78.

Dr. Rucker argues summary judgment is warranted in his favor because he provided constitutionally adequate treatment for Whitmore's wisdom tooth. ECF 86 at 10-13. Here, it is undisputed Dr. Rucker treated Whitmore's wisdom tooth by examining the tooth, performing x-rays, submitting requests for oral surgery, prescribing pain medications, and instructing Whitmore to submit additional HCRF if his symptoms worsened. Because it is undisputed Dr. Rucker provided some treatment for Whitmore's wisdom tooth, the question is whether this treatment was "so plainly inappropriate" as to permit the inference that Dr. Rucker intentionally or recklessly disregarded Whitmore's medical needs. *See Hayes*, 546 F.3d at 524.

Whitmore raises three arguments in this regard. First, Whitmore argues Dr. Rucker's treatment was plainly inappropriate because Dr. Rucker erroneously caused him to believe he had been approved for oral surgery and was awaiting scheduling, when in fact his request for oral surgery had been denied by Dr. Pearcy. ECF 95 at 3, 6-7, 13. Whitmore attests he did not realize he had been denied for oral surgery until November 2019. ECF 94-2 at 3. But even assuming Dr. Rucker did not adequately communicate to Whitmore that his request for oral surgery had been denied by Dr. Pearcy, this at most shows Dr. Rucker was negligent, not deliberately indifferent. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference). Specifically, the decision to deny oral surgery was made by Dr. Pearcy, not Dr. Rucker, and Dr. Rucker's alleged

6

failure to communicate that decision to Whitmore does not show he intentionally or recklessly disregarded Whitmore's medical needs.

Second, Whitmore argues the treatment provided by Dr. Rucker was plainly inappropriate because Dr. Rucker should have known his tooth pain was constant rather than intermittent, as he submitted constant HCRF. ECF 95 at 7, 17. But Whitmore agrees his pain "fluctuated" and was only severe at times (ECF 95 at 2), and it is undisputed he did not submit any HCRF between June 2019 and October 2019. Moreover, there is no indication in the medical records that Whitmore experienced constant pain until January 2020, when Whitmore submitted a HCRF stating he was in "constant pain" and was therefore approved for extraction. Therefore, Whitmore has not shown Dr. Rucker was deliberately indifferent for believing his tooth pain was only intermittent prior to January 2020.

Third, Whitmore argues the treatment provided by Dr. Rucker was plainly inappropriate because Dr. Rucker did not provide him pain medication during his first visit, so he had to purchase his own Tylenol from commissary. ECF 95 at 17, 19. But it is undisputed Dr. Rucker began prescribing Whitmore pain medication at his second visit in November 2019, and Whitmore has not shown that Dr. Rucker's failure to prescribe pain medication at the first visit was anything more than negligence. *See Pierson*, 391 F.3d at 902.

Thus, the undisputed facts show Dr. Rucker provided constitutionally adequate treatment for Whitmore's wisdom tooth by examining his tooth, performing x-rays, prescribing pain medication, submitting requests for oral surgery, and instructing

Whitmore to submit additional HCRF if his pain or symptoms worsened, and Whitmore provides no evidence by which a reasonable jury could conclude this treatment was plainly inappropriate. Summary judgment is therefore warranted in favor of Dr. Rucker on this claim.

### Monell[1] *claim against Wexford*

Whitmore is proceeding against Wexford "for following a collegial review policy that resulted in him receiving constitutionally inadequate care for the painful condition that developed on June 17, 2019, in violation of the Eighth Amendment[.]" ECF 12 at 5. Under *Monell*, a private company like Wexford may only be held liable for constitutional violations caused by the company through its own policy, practice, or custom. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 694 (7th Cir. 2012). To recover under *Monell*, a plaintiff must establish that: (1) he suffered a deprivation of a federal right (2) as a result of an express municipal policy, a widespread custom, or a deliberate act of a decision-maker with final policymaking authority for the municipality that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Therefore, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

Thus, in order to succeed on his *Monell* claim, Whitmore must provide evidence that an employee of Wexford violated his Eighth Amendment rights. *See id.* The only

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

8

relevant Wexford employees here are Dr. Rucker and Dr. Pearcy. The court already has determined the undisputed facts show Dr. Rucker provided constitutionally adequate medical care for Whitmore's wisdom tooth, as discussed above. Therefore, to survive on this claim, Whitmore must provide evidence Dr. Pearcy[2] took an action that violated his Eighth Amendment rights.

Here, neither party was able to provide evidence from Dr. Pearcy directly. The medical records show Dr. Pearcy denied extraction requests in June 2019 and November 2019, and then approved an extraction request in January 2020. Dr. Rucker attests that Dr. Pearcy "reviewed the off-site requests for oral surgery" and "denied the initial request because there was no indication for surgery at that time," but "later approved the surgery request after Whitmore's tooth and symptoms indicated that extraction was medically appropriate." ECF 86-1 at 11. Dr. Rucker attests that "I do believe that denying Whitmore's initial request for oral surgery was completely reasonable and appropriate because at that time only intermittent pain and intermittent wisdom tooth issues were documented[,] no infection was noted at that time, and watchful waiting was more than appropriate given the circumstances." *Id.* Dr. Rucker concludes that "all of Dr. Pearcy's actions, in reviewing the requests for Whitmore's oral surgery requests, were entirely reasonable and appropriate, and that his medical judgment was entirely reasonable." *Id.*

---

[2] Dr. Pearcy passed away after this lawsuit was filed and was dismissed from this action on February 14, 2023. ECF 84.

9

In his response, Whitmore argues that Dr. Pearcy was deliberately indifferent for denying the initial tooth extraction requests because the requests were submitted by Dr. Rucker, his treating physician. ECF 95 at 20-21. But a disagreement between two medical professionals does not show deliberate indifference. Rather, Whitmore must show Dr. Pearcy's decision to deny the tooth extraction requests represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [Dr. Pearcy] actually did not base the decision on such a judgment." *Jackson*, 541 F.3d at 697.

Here, the record indicates Dr. Pearcy denied the initial tooth extraction requests because Whitmore's medical records indicated his pain was only intermittent and he had no infection. *See* ECF 86-1 at 11; ECF 86-5 at 75 ("Pt complains of tooth bothering him intermittently"); *id.* at 79 (stating Whitmore's tooth is "slightly symptomatic" with "no infection present"). Thus, the medical records show Dr. Pearcy had a valid medical justification for denying Dr. Rucker's extraction requests. Whitmore also argues his tooth pain was constant, not intermittent, but it is undisputed the medical records available to Dr. Pearcy at that time indicate only intermittent tooth pain. *See id.* Thus, there is no evidence by which a reasonable jury could conclude Dr. Pearcy violated Whitmore's Eighth Amendment rights by denying the initial extraction requests when Whitmore's medical records indicated only intermittent tooth pain and approving the later request once the records indicated constant paint.

Therefore, because there is no evidence by which a reasonable jury could conclude that either Dr. Rucker or Dr. Pearcy violated Whitmore's Eighth Amendment

10

rights, summary judgment is warranted in favor of Wexford on Whitmore's *Monell* claim. *See Sallenger*, 630 F.3d at 504.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion; and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Hosey Whitmore and to close this case.

SO ORDERED on August 10, 2023.

                                                            s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge